Good morning, Your Honors. Good morning. Camille Cook for the Petitioners in this case, Mr. and Mrs. Castro. Preliminary, I'd like to point out that this couple has been fighting their deportation and removal case for 10 years. Their case originally started in 1998. At that time, their two U.S. citizen children were 7 and 4. At the time of their removal hearing before the IJ, 5 years later, after it was continually reset almost exclusively by the Court, the children were then 12 and 9. As we stand here today, the two U.S. citizen children are 15 and 12. It's been pending before this Court for over 3 years. Our primary argument is that this case represents clear due – clear violations of due process under the Fifth Amendment of the U.S. Constitution. And under the Ninth Circuit cases of Colmenar and Melendez, the Ninth Circuit will grant a petition for review on due process grounds if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his or her case. The alien, of course, must also show prejudice. That is, that the outcome of the proceeding may have been affected by the alleged violation. The BIA erred in this regard in that they cited their own case of Assad, which is not even on point, for the proposition that they – they must show that prejudice was likely or that the outcome would have likely been different. But let me cut right to the chase. In your view, what part of their case on hardship were they prevented from presenting? Well, the I.J. just completely ignored their doctor's testimony. The record is – he failed to make sure that the record was clear throughout Dr. Batista's testimony. And the transcript is riddled with indiscernible, untranslated, indiscernible, untranslated. So how can this Court even know exactly what the doctor said? And the I.J. completely cherry-picked those aspects of Dr. Batista's testimony which were most helpful to his preconceived plan to deny the case. But the testimony comes in, and as you know from these cases, the transcripts are often difficult, and the conditions of – I mean, the only thing we've got is a tape recorder in the room, which may or may not mean that the people in the room didn't hear it. It just means that when the transcriber is transcribing from a tape recording – Well, I understand that. But I believe it's the I.J.'s responsibility to make sure that he or she is creating a record which is reviewable. And we don't know if the – exactly if the I.J. took into account the doctor's – aspects of the doctor's testimony, because he just wholesale ignored them, as did the BIA. They also completely failed to mention the psychologist's report by Dr. Schuller. Is there certain evidence – not evidence that you're saying was improperly that, in your view, should have been allowed in that the I.J. kept out? I'd have to say no. It's in the record. It was just ignored. What evidence that was ignored would have made a difference? Well, I think many aspects of Dr. Battista's testimony, as well as Dr. Schuller's affidavit – Name one. Basically, the doctor – give me a second – the doctor – Battista testified that her asthma is high-grade, that she's constantly being seen for observation, that she is at risk of recurring bronchitis, can even go into respiratory distress or arrest, and she can die from respiratory failure. That's not mentioned in his decision. But now, it seems to me the key question is, could she be treated in Mexico? Is somebody – is there testimony that she could not be treated in Mexico? There's testimony that she might be able to receive treatment in big cities, but there's also testimony from the doctor that she would be more likely to suffer less serious asthma symptoms if she lives in a rural area. And the government somewhat disingenuously, in my opinion, argues in their brief that she could live in a rural area, but close enough to a big city that she can travel when she needs to, whereas the doctor specifically testified that she needs to be close to emergency – high-quality emergency medical care, which she is. Well, is there any doubt that if she did live in, say, Mexico City, that she would be treated? But she would be at greater risk of having worse symptoms. Right. Presumably. And there is treatment available, but it's extremely expensive. And given that her parents immigrated to the U.S. at the tender ages of 14 and 16, it's extremely unlikely that they would be able to obtain employment in Mexico City or any major city, considering that they have, you know, no family, no training, very little education. There are all kinds of jobs. Pardon me? There are all kinds of jobs. There certainly are, Your Honor. What is the evidence? But whether or not they'd allow you to pay for the highly expensive medical treatment that this child – according to – the doctor that testified had been treating her since she was 9 years old, and he clearly said that she – that the treatment she would receive in Mexico would be substandard and that it would be putting her at risk. What did they know about that? What did the doctor know? Yeah. About treating a medical child? Well, he testified that he – well, first of all, he testified that he immigrated from Mexico himself when he was 12 years old and that he volunteers down there and that he does have – and because he has a lot of Mexican and Mexican-American patients, he does have some idea as to medical facilities in Mexico and in terms of his own personal experiences, his volunteer work down there in certain areas. And the doctor stated, I could probably get medical treatment in Guadalajara, but, again, the question is the cost and, you know, again, if she's going to live in a rural area to avoid the symptoms, but she's going to have to try to travel quickly. And the family has no ties or connections to any of these big cities and no family down there. Is there any Mexican health care provided by the government? According to the only – there was information on the record on both sides. The government presented at the final hearing, after the case had been pending for five years, documentation regarding medical care in Mexico. The government or the judge allowed that in over objection by counsel because it was late filed. They had not had an opportunity to review it. It was filed at the hearing. The judge relied upon that in his decision, but failed to even mention any of the numerous reports regarding the lack of availability of medical care, especially in remote rural areas that were submitted by the Respondent or by the – what a judge refers to or does not refer to. You know, we see decisions by administrative law judges all the time, and they don't recite the whole testimony. They pick out – you say cherry pick. They pick the evidence that supports the conclusion they're reaching. Well, it seems in this case that the judge decided before he walked into the court when he was going to deny this case. He also – he takes the time to go on for three security in 03, I believe, where they were arresting people at airports perhaps working with fossil security numbers. He cites numerous articles from the New York Times, none of which were presented to Respondents in advance, none of which had anything to do with the record of their case. He walked into the courtroom with these articles in his hand, knowing he was going to deny this case. I'd like to just – I'd like to reserve two minutes for rebuttal, so I'm almost up, I believe. May I continue? You have another question? With regard to the – the two things I really want to focus on, Dr. Batista's testimony, which, again, he just – he cherry picked aspects of it, and Dr. Shuler's affidavit, which is completely ignored by the IJ, he states that removal to Mexico would place the Castro children at great psychological, emotional, and physical risk. Both of these – What physical risk? Emotional and physical risk. Well, that's a conclusion. What is the physical risk to which this – To health. But this is a psychologist. Pardon me? The asthma treatment. Right. Where in the record is there any indication that the parents, Castro Marquez, will have to live in a rural area? Why can't – what kind of trade or profession do they have, and why is it – are they going to be limited to a rural area? Well, the doctor testified that her symptoms would likely be less severe in a rural area, as Mexico City has one of the highest asthma rates in the world, for example, and that she would likely have better controlled symptoms if she lived in a rural area. So the government in their brief argues she can live in a rural area and then just travel to the big city when she needs to. But the rural area that they're from is four hours by bus from the nearest medical care. So it's not clear – you know, they're going to try to – while they're trying to relocate after over 20 years in the U.S., they're going to try to find just exactly the right location where they can get their daughter medical care and get jobs. Okay. Now, you're down to 50 seconds, and you wanted to save two minutes. Why don't we hear from the government, and then we will give you two minutes? Thank you so much, Your Honor. Good morning, Your Honors. May it please the Court, Nora Oskoli-Schwartz, for Respondent, the Attorney General, who is presently Michael Mukasey. I think counsel is talking about a different case than I'm talking about. We have five fatal problems with the Petitioner's arguments. One, this Court reviews the decision of the board. Could you raise your voice a bit? One, there are five fatal flaws with Petitioner's argument. One, this Court reviews the decision of the board. Petitioner doesn't challenge the decision of the board at any time. Two, Petitioner's alleged bias on the part of the immigration judge. They do not allege bias on the part of the board, nor do they argue that the board decision was infected by any alleged bias on the part of the immigration judge. Four, Petitioners don't say that the board erred or that the board ignored any evidence. They were not prevented from presenting any evidence. That is the evidence Petitioner's presented. Twelve or 1,500 pages of documents, including articles that say there is free health care for Mexican citizens. Their own pediatrician said that Liliana had childhood asthma. Childhood asthma is, in 80 to 90 percent of cases, resolves itself by the age of 12. He said that there was hers was chronic. It might not fall in that percentage, but she's past the age of 12. They have never provided evidence saying that she is not, that she is part of that 10 percent and that her asthma continues. Let me cut to the chase on this, or at least for me cut to the chase. Yes, Your Honor. And that is, if the only issue is whether or not the I.J. and the board properly applied the standard of hardship that would be relief from the removal, we don't have jurisdiction to redetermine that. I was about to say there's, that's not the issue. So the only thing we have jurisdiction to determine is a constitutional question such as due process. Exactly. So for us to get into the actual hardship questions, we don't have jurisdiction to do that. Absolutely. And that's why I don't understand Petitioner's argument. She's saying cherry-picking. Cherry-picking is another way of saying substantial evidence. Well, her argument, as I understand it, is that the cherry-picking is part of the denial of due process, that this is an I.J. who comes in there, determined to make, determined to make X decision. He doesn't listen to the evidence. And the truth is, if we had a judge who flips a coin, that's a denial of due process. Or we have a judge who, before listening to the evidence, has decided that X is going to win and Y is going to lose, that is a denial of due process. But she needs to show us that. Well, it hasn't been shown. First of all, we're not talking about the immigration judge decision. Well, yes, we are and we aren't. Certain things about the immigration judge may well be a denial of due process that the BIA cannot cure. That is to say, if there's an exclusion of evidence, that BIA simply cannot cure that. It's a harder question for me whether or not the BIA can cure bias by the I.J. because there's so much deference given to the I.J. Except the two problems with that is they have not identified any evidence they were prevented from presenting. And that's the entire case. To this day, they have not identified a single factor, a single piece of evidence. No witnesses were excluded. All the evidence was considered, including theirs. Their doctor was allowed to testify by telephone. Nothing was cut off. In fact, Petitioners argued that too many questions were asked, too much information was elicited. And on appeal to the Board, all they said was he was biased, but they did not say how this bias affected the decision. And they do not charge this against the Board, and they still have not identified any evidence which was ignored. All they identify as evidence, they didn't like the way it was weighed. And that's a discretionary decision over which this Court has no jurisdiction. So without a showing of prejudice, which is what they were presented from presenting, they cannot prevail in a due process argument. Kennedy, how do you answer the objection that the I.J. improperly allowed the country conditions documents in because it was untimely? Well, for one thing, there was no prejudice because counsel was familiar with the country reports for Mexico. And the other thing is if you ---- Where does the record show that? I'll have to get that for you. I don't have the specific. I think I cited it in my brief, the page where the attorney said, yes, I'm familiar with it. But again, that's not determinative because the immigration judge and the Board did not rely on the country reports. They relied on the 1,200 pages of documentations Petitioners themselves submitted, including the reports that say, I think the program is Progresa, that there is health care available in Mexico. And that was in their evidence, not in the last-minute country reports. Well, didn't they rely on the issue, on the fact that Mexico provides free universal health care? That was in Petitioner's submission. That was in the ---- Say again. It was in the documents Petitioner submitted. And that is ---- and those pages are cited in the record. They were on page 1,200, I believe. But out of the 1,200 pages, I don't have a specific cite now. But that's the issue. They relied on evidence in the record. They did not prevent any testimony, evidence, witnesses, corroboration. Nothing was kept out. And the argument that the translation was inadequate, it's raised for the first time here in oral argument, so we won't even get to exhaustion on that one. But the point is, nothing was prevented from presenting. Therefore, there's no prejudice. The panel has no other questions? Thank you. The government submits. Roberts.  Response? If I may. The Reyes-Melendez case makes clear that the BIA cannot launder due process violations by the immigration judge merely by stating that they failed to prove their case. And the BIA's decision ---- we do challenge the BIA's decision. The BIA's decision clearly states, Absent evidence that the Respondent's daughter's asthma could not be properly treated in Mexico or that she would be deprived of medical care, we cannot conclude that such a health care issue is so serious. There is evidence. But if you're just ---- They just say absent evidence, like it's not there. Excuse me. But if you're just arguing about evidence that's in the record and the weight that's to be attached to it, we have no power to get into that. Well, there ---- We have power to decide what ---- We have ---- I.J. is clearly biased against them. And there's also no evidence. There's virtually no evidence in the record as to what hardships the Respondent's ---- You're not appealing from the I.J.'s determination. You're appealing from the BIA's determination. Now, show me why the BIA is biased against your client. Because they just very ---- in a very circular manner. First of all, they misstate the standard for prejudice. They also fail to look at Dr. Shuler's affidavit. They say absent evidence as if it were not there instead of saying absent sufficient evidence. They don't say sufficient. They just say, like, there's no evidence. There's almost no evidence in the record regarding hardship to Mrs. Castro's parents. Now, I wasn't the attorney that presented this case, obviously. I came into this case, like yourselves, at the end, having reviewed the record basically de novo myself. I never ---- I didn't ---- I wasn't on the briefs or anything else. But my argument would be that the judge's bias prevented the attorney that was at that evidence in because it was so clear from the beginning that he intended to deny this case. And with regard to the translation issue, I'm not saying that the translation was inadequate. There are many times throughout the record it says untranslated. It's simply untranslated. That's up to the ---- if the translator isn't translating, it's up to the IJ to say, to basically say, you're supposed to be translating that. What did they say? Okay. That's your two minutes, but I don't want to cut you off. If you have a concluding paragraph, we would be happy to hear it. Your Honor, I basically made my points. I think that this case, in light of the ten years that these people have been fighting their case, the fact that ---- oh, I just want to say one more thing. Dr. Bautista did ---- you know, he stated that he believes, even though it's childhood asthma right now, that it will be chronic. So contrary to what the government says, this case screams for a remand. We need, at the minimum, we need to know what's going on with the children now. Ten years is too long for this family to be in limbo. Okay. Thank you. Thank both of you very much. The case of Castro-Marquez v. McKaysey is now submitted for decision.
judges: Noonan, W. Fletcher, Bea